[No. 24696. Department One. January 11, 1934.]

JOHN F. YANOSCHECK, *Appellant,* v. MONTGOMERY WARD & COMPANY, *Respondent.*[1]

*John H. Roche,* for appellant.
*Graves, Kizer & Graves,* for respondent.

MITCHELL, J.—John F. Yanoscheck worked as janitor and night watchman at the store of Montgomery Ward & Co., in Spokane, from April, 1930, to October, 1932. In December, 1932, he sued the defendant, alleging that his wages were to be four dollars per day until May 1, 1932, and $3.75 per day thereafter; that defendant agreed to pay extra for Sundays, and that, during the period mentioned, he worked sixty-eight Sundays at four dollars per day and fourteen Sundays at $3.75 per day, for which he had not been paid and for which he demanded judgment.

In defendant's answer, the employment was admitted; that there was to be extra pay for Sundays was denied, and there was a denial of indebtedness. It

[1]Reported in 28 P. (2d) 270.

was further alleged in the answer that each week during the employment plaintiff was paid in full for his services, and that he had never protested or claimed to the contrary until the employment terminated. The further affirmative answer was denied by a reply.

At the conclusion of the plaintiff's case, in a trial to a jury, a nonsuit was granted on motion of the defendant, upon which judgment was entered. The plaintiff has appealed.

It is claimed that the court erred in granting the nonsuit. It is not claimed, nor was there any evidence, that the original contract of employment was in writing. The appellant testified that the agreement was oral and made with the superintendent of respondent's store, who continued as superintendent only a few weeks thereafter; that he was paid four dollars extra for the first Sunday; that he did not work the next two Sundays, after which he worked the next Sunday, at or about which time the superintendent who had employed him left the respondent, and that one Myers took his place as superintendent; that he was not paid for the second Sunday on which he worked, and a few evenings thereafter, on meeting the new superintendent and telling him to remember that he did not get pay for last Sunday, the superintendent answered: "I am very busy now. I will see you later, and if I were you I would not worry about it;" that, some months later, after being paid a week's time which included three days off for sickness, on speaking to the superintendent about it, he, appellant, remarked that he wanted to get his Sunday's pay, and was told by the superintendent that it would be fixed all right; that, in October, 1932, he told the new superintendent that he was going to quit. He testified:

"A. The time I told him I couldn't stand it any longer, and I said that I wanted to get my Sunday pay

because I was hired for four dollars a day, and all Sundays I worked I should get pay for. So he told me come next day and get my time. So I went next day;" and that the superintendent told him he would not pay extra for Sundays. The appellant further testified as to the number of Sundays he worked, substantially as alleged in his complaint.

On commencing work, appellant was required to furnish a fidelity bond, and in his written application for it he stated that the compensation he was to receive was $24 per week.

During the course of his employment there were vacation periods from work and at other times some irregularity in the number of days' labor performed each week. Two plans were used to keep record of the number of days he worked and of payments made to him:

(1) An individual time sheet upon which were printed four similar forms, one for each week, and each so printed that the number of days' work in each week could be separately stated, and at the conclusion of each form a blank space was provided to be filled for "salary paid" and another blank space for the signature of the "employee" following the words "received payment." A great many of these sheets for the several years were identified by the appellant and admitted in evidence. To explain more fully, we speak particularly of twelve of these sheets—forty-eight weeks, in the year 1931—upon each of which weekly forms "$24.00" was written in the blank for "salary paid." At the trial, appellant admitted that he, as employee, signed his name to each as having received payment according to the statement. These forty-eight weekly statements and receipts consisted of one for four days, one for five days, seventeen for six days each and twenty-nine for seven days, each.

(2) The other plan for keeping record of time and payments, concurrently with the one just spoken of, consisted of time cards, each divided by a perforated line, one end of the card being a receipt stub; the stub and other portion of the card having the same number upon it. At the commencement of the week, the appellant was given the stub, at which time the corresponding card was placed in the time clock to be punched daily by the appellant, as he worked. At the end of the week, upon calling for his wages, the amount due was ascertained from the punched card and he was paid in cash accordingly, upon his signing the corresponding stub under the words ''Received payment for wages due.'' A large number of these cards and corresponding stub receipts were identified by appellant, who admitted his signature on the receipts, and they were admitted in evidence. The time cards punched from day to day by him as he worked show, as did the time sheets heretofore mentioned, that, from time to time during the whole course of his employment, he worked from a few days to seven days a week.

This statement is as favorable to appellant as the whole record justifies. It is the testimony of the appellant himself, and in this respect it may be stated that no other assignment of error argued by appellant can affect the result, as it must be determined by the facts hereinbefore mentioned.

At none of the scores and scores of times appellant signed weekly receipts for payment of wages due and other instruments wherein he signed in immediate connection with the written statement that his weekly wages were twenty-four dollars, did he ever, upon receiving his pay or at any other time, file any formal protest to his weekly statements of account, or assert that he was claiming pay for Sunday extra, and as not within a week's work, until at the time of quit-

ting the employment. There was no proof that the new superintendent was advised the appellant would claim that the terms of his employment were other than as shown by the office records of weekly services and payments; nor is there anything substantial about the statement of the appellant to the superintendent, upon casually meeting him on two occasions, not to forget Sunday or that he wanted pay for the Sunday, as indicating that he was claiming his contract provided pay for Sunday over and above a week's work, or as amounting to anything more than a mistake in overlooking Sunday altogether in counting the number of days he worked that week.

There is no allegation or evidence of fraud or deceit in the case; and the evidence of the weekly statements and settlements and of the written signature of the appellant to receipts and admissions in connection with those statements throughout the long course of his employment, which are not only not contradicted but testified to and established by the testimony of the appellant himself, precludes him, as a matter of law, from now contending that the respondent is indebted to him. The nonsuit was properly granted.

Affirmed.

BEALS, C. J., MAIN, MILLARD, and STEINERT, JJ., concur.