[No. 26596. Department One. September 22, 1937.]

ALBERT E. HERMAN, *Respondent*, v. GOLDEN ARROW DAIRY, INC., *Appellant.*[1]

*Allen, Froude & Hilen,* for appellant.

*Colvin & Rhodes,* for respondent.

BLAKE, J.—Plaintiff brought this action to recover wages alleged to be due under the following contract, couched in the terms of a corporate resolution, and signed by plaintiff and nine others:

"November 1, 1933

"*Be it resolved: That on and after November 1st 1933, the wage scale of our members shall be a pro- rata divisioning of all available income up and above current and fixed monthly obligations; said amounts to be determined on the 20th of each month as now,*

"And be it further resolved, that with the return of normal times, and with it better incomes; all earnings up and above current and fixed monthly obligations shall be used for the retirement of present labor debts before any dividends are declared,

"*And further that the future differences, if any, between the salary declared and the union scale shall be kept as a matter of record, with the understanding that when the present labor debts have been retired; the then active members' shall be entitled to a bonus in the amount of the sum of the above mentioned dif- ferences, to be paid off as the company is able to pay.*

"The express purpose of this resolution in modify- ing the salary schedule, is to protect the credit and fi- nancial stability of the company."

The signers of the contract had been in the employ of the defendant for some time and had, on November 1, 1933, credit balances in various amounts on account of wages. The amount due plaintiff at that time was $666.03. The signers of the agreement were, with two exceptions, drivers of milk trucks and members of Milk Wagon Drivers and Dairy Workers Union, Local No. 66. The defendant operated a "union dairy," and, until the above agreement was executed, paid the union scale of wages, $6.75 per day.

Plaintiff continued in the employ of the defendant

until January, 1936, when he was discharged. At that time, the balance due on back wages, liquidated as of November 1, 1933, had been reduced to $168.04. Subsequent to November 1, 1933, he received in current wages $591.75 less than he would have received had he been paid the union scale of $6.75 per day.

In this action, plaintiff seeks to recover the above amounts and also a sum claimed to have been earned on account of *overtime*. The union scale was based on an eight hour day, and the by-laws of the union provided that the scale for overtime should be at the rate of time and a half of the daily wage. On trial to the court, plaintiff was awarded $168.04, and interest of $66.68, on account of wages due as of November 1, 1933; $591.75, on account of balance of wages earned subsequent to November 1, 1933, on the basis of the union scale; and $630, on account of *overtime*. Defendant appeals.

■ Appellant admits the balance of $168.04, due on account of wages earned prior to November 1, 1933, but urges that it is not chargeable with interest on deferred balances. No agreement to the contrary appearing from the contract, the balance, being liquidated, carries interest. Rem. Rev. Stat., § 7299 [P. C. § 3155]; *Royal Dairy Products Co. v. Spokane Dairy Products Co.*, 129 Wash. 424, 225 Pac. 412.

■ The appellant contests the other two items, on the theory that the contract does not provide for the maintenance of the union scale of wages, but establishes a *wage scale* to be measured by "a pro-rata divisioning of all available income up and above current and fixed monthly obligations." It contends that the credit set up on its books in accordance with the third paragraph of the contract, in the amount of the difference between the union scale and the amount actually received by respondent, was simply a bonus, payable

only as "the company is able to pay," and, further, that payment was contingent upon respondent being then in the employ of the company.

We do not think the contract is susceptible of such interpretation. The company had at all times been a union dairy, and, according to the testimony of its president, continued to operate as such subsequent to November 1, 1933, except that it did not pay the union scale. But he further testified that the intention at all times was to pay and ultimately settle with the drivers on the basis of the union scale. This intent was manifested by setting up on the company's books from month to month a credit in the amount of the difference between what they were entitled to under the union scale and what they actually received under the "pro-rata divisioning" plan.

As a matter of practice, the "pro-rata divisioning" plan was, in the spring of 1935, modified, upon the demand of Milk Wagon Drivers and Dairy Workers Union, Local No. 66, that all their members demand and receive the union scale of $6.75 per day. From that time on, the appellant paid the union members by check at that rate. The signers of the agreement, however, were supposed to remit $32.50 so received each month to the company—thus in letter complying with the demand of the union and holding to the spirit of their agreement with the appellant of November 1, 1933. Most, if not all, of the drivers, except respondent, did turn back to the company a portion of the wages received under the modified plan. Respondent, however, refused to cooperate in this plan. From that time on, he received and retained wages on the basis of the union scale of $6.75 per day.

Not only from the contract itself, but from the method in which it was carried out, it seems clear to us that the intention of all the parties was to maintain

the union scale of wages as it had been maintained prior to November 1, 1933. In essence, the contract simply provided for deferred payment of a portion of wages earned, "to be paid off as the company is able to pay." It is unnecessary to discuss the effect of the conditions of payment just quoted, since it is clear from the evidence that now "the company is able to pay."

As we have said, the union scale provided for time and a half for overtime. However, this requirement of the union had never been recognized by the appellant. Nor had compliance ever been demanded by the union or any of appellant's employees. The latter had never, before or after the agreement of November 1, 1933, made any report of, or laid any claim to, overtime. Respondent himself did not keep track of his overtime until sometime in the spring of 1935—about the time the union demanded that the union scale be maintained. Even then he did not report it or advise the appellant that he was expecting compensation for it at the union scale, although he was receiving monthly settlements on the *per diem* union scale basis. The first notice appellant had of any claim of overtime was when this suit was instituted.

Assuming that, under the terms of the contract, he would have been entitled to overtime, he has by his conduct estopped himself from claiming compensation for it. *Yanoscheck v. Montgomery Ward & Co.,* 176 Wash. 137, 28 P. (2d) 270. So furtive an attempt to fasten liability on another is not to be countenanced.

The cause is remanded, with directions to modify the judgment accordingly.

STEINERT, C. J., GERAGHTY, MILLARD, and MAIN, JJ., concur.